**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,                    No. CR-13-00383-PJH (DMR)

12              Plaintiff(s),

13         v.                                       **ORDER RE: DEFENDANT'S MOTION
                                                    TO COMPEL DISCOVERY [DOCKET
14    FRANK ANTHONY MORTON,                         NO. 67]**

15              Defendant(s).
                                        /
16

17         Defendant Frank Anthony Morton filed a motion to compel discovery from the government.

18    [Docket No. 67.]  For the reasons stated below, the motion is **denied**.

19                                   **I. BACKGROUND**

20         On August 29, 2013, the government filed a criminal complaint against Morton and his

21    co-defendant Miguel Angel Nunez, charging both with conspiracy to distribute cocaine.  [Docket

22    No. 1.]  In a superceding indictment filed on October 3, 2013 against both defendants, Morton was

23    charged with conspiracy to possess with intent to distribute and to distribute cocaine, and possession

24    with intent to distribute cocaine, stemming from Morton's delivery of cocaine to a confidential

25    government source ("CS") on August 28, 2013.  [Docket No. 31.]

26         Two events are germane to the analysis of Defendant's motion.  One transpired on August

27    12, 2013 and the other on August 28, 2013.

28

**United States District Court**
For the Northern District of California

**A. August 12, 2013 Drug Transaction[1]**

On August 12, 2013, Nunez engaged in a drug transaction. The parties agree that Morton was not involved. In this incident, Nunez sold the CS nine ounces of cocaine in the parking lot of a Walmart in Oakland. *See* Motion at 3; Nunez Plea Agreement [Docket No. 65] at 3-4. Nunez drove to the parking lot, exited his vehicle, walked over to the CS's car, and entered it. Motion at 3. The drug transaction took place in the car. *Id.*

**B. August 28, 2013 Drug Transaction**

In late August 2013, Nunez called the CS and discussed the possibility of doing a drug deal in the coming days. *Id.* On August 28, 2013, Nunez called the CS and they agreed to meet at the same Walmart parking lot at 1:00 p.m. Motion at 3-4; Opp. [Docket No. 72] at 2. At approximately 12:58 p.m., Nunez arrived at the Walmart parking lot driving a white panel truck. Motion at 3-4; Opp. at 2. Morton, who is Nunez' nephew, was sitting in the passenger seat of Nunez's vehicle. *Id.* At approximately 1:01 p.m., Morton exited the white panel truck and walked across the parking lot and entered a nearby Game Stop store. Motion at 4; Opp. at 2. Nunez initially intended for the CS to pick up the cocaine from Nunez's car, but because the CS was unwilling to do so, Nunez went into the Game Stop store and recruited Morton to make the delivery to the CS. Motion at 5. At approximately 1:03 p.m., Nunez exited the panel truck with a white paper bag under his arm and walked into the Game Stop store. *Id.* Nunez handed Morton a white paper bag. Motion at 4; Opp. at 3. Morton and Nunez then exited the Game Stop store together. *Id.* While Nunez walked into a nearby Jamba Juice store, Morton walked over to the CS's vehicle, entered the passenger side, closed the door, and placed the white paper bag on the floorboard. *Id.* Shortly thereafter, agents arrested Morton and Nunez. *Id.* A substance contained in the white paper bag was later tested at the DEA laboratory and the results showed it contained 1003 grams of cocaine. Opp. at 3.

**C. Motion to Compel**

Morton moved to compel the government to produce five categories of documents:

---

[1] The court derived the background facts from the parties' motion papers. According to Morton, the facts adduced in his motion to compel are generally taken from discovery in this case. *See* Motion at 2 n. 1; at 2-8 (citing to documents by bates number). The government did not cite sources for facts described in its briefing.

**United States District Court**

For the Northern District of California

1    1.  Audio and video of the August 12, 2013 undercover operation involving the CS and Nunez at the Walmart parking lot;

2

3    2.  Any rough notes[2] of the Nunez and Morton interviews conducted by federal agents on August 28, 2013;

4    3.  Any "safety valve[3] debrief statements made by Nunez regarding the August 28, 2013 drug transaction, including statements that mention or refer to Morton;

5

6    4.  Any discussions within the United States Attorney's Office or between members of that office and any federal law enforcement agents about ways and/or means of preventing Nunez from being a witness at Morton's jury trial;

7

8    5.  Any discussions between any member of the United States Attorney's Office with Nunez defense counsel that touched upon the subject of Morton.

9    Motion at 7-8.

10   At the May 7, 2014 hearing, defense counsel  withdrew Morton's request for information

11   responsive to Categories 4 and 5.  With respect to Categories 2 and 3, counsel informed the court

12   that the parties had reached a tentative agreement.  Accordingly, the motion to compel discovery in

13   response to Categories 2 and 3 is denied without prejudice.  If the parties have further disputes about

14   those requests, they shall first meet and confer, and then file a joint discovery letter if they are

15   unable to resolve the matter without judicial intervention.

16   The only remaining dispute is Morton's request for audio and video recordings of the August

17   12, 2013 transaction.

18                                        **II. LEGAL STANDARDS**

19   "There is no general constitutional right to discovery in a criminal case." *Weatherford v.*

20   *Bursey*, 429 U.S. 545, 559 (1977).  Federal Rule of Criminal Procedure 16 governs criminal

21   discovery and "grants criminal defendants a broad right to discovery." *United States v. Muniz-*

22   *Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013).  Rule 16 enumerates categories of information subject

23

24

25        [2]  "'Rough notes' are the original notes taken by agents during interviews with prospective

26   witnesses. The FBI must preserve these notes in order to aid the trial court in determining what evidence must be produced at trial." *United States v. Taylor*, 802 F.2d 1108, 1117-18 (9th Cir. 1986).

27        [3]  The statutory "safety valve" grants relief from certain mandatory minimum sentences when

28   certain criteria are met. *United States v. Mejia-Pimental*, 477 F.3d 1100, 1101 (9th Cir. 2007) (citing 18 U.S.C. § 3553(f)).

1    to pre-trial discovery. Fed. R. Crim. P. 16(a)(1)(A)-(B), (E).  The rule also specifically enumerates

2    items that are not subject to disclosure, except as otherwise permitted. Fed. R. Crim. P. 16(a)(2).

3         In addition to its obligations under Rule 16, the government has a separate affirmative

4    obligation to disclose information favorable to the defense that is material to the issue of guilt or

5    punishment, and information that impeaches the government's case.  *See Brady v. Maryland*, 373

6    U.S. 83, 87 (1983); *Giglio v. United States*, 405 U.S. 150, 151 (1972).  Such exculpatory evidence is

7    material when, "considered collectively, not item by item," it would create a "reasonable

8    probability" of a different result for the defendant.  *Kyles v. Whitley*, 514 U.S. 419, 433-36 (1995)

9    (quoting *United States v. Bagley,* 473 U.S. 667, 682 (1985)).  "A 'reasonable probability' is a

10   probability sufficient to undermine confidence in the outcome."  *Bagley*, 473 U.S. at 682.

11        The government makes the initial determination of whether the requested information

12   contains exculpatory evidence or evidence that impeaches the government's case.  *United States v.*

13   *Henthorn*, 931 F.2d 29, 30-31 (9th Cir. 1991); *United States v. Jennings*, 960 F.2d 1488, 1492 (9th

14   Cir. 1992) ("[T]he presumption is that official duty will be done . . . .").  "In response to a request

15   for exculpatory evidence the prosecution does not have a constitutional duty to disclose every bit of

16   information that might affect the jury's decision; it need only disclose information favorable to the

17   defense that meets the appropriate standard of materiality."  *United States v. Cadet*, 727 F.2d 1453,

18   1467 (9th Cir. 1984) (citations omitted).  "If the prosecution is uncertain about the materiality of

19   information within its possession, it may submit the information to the trial court for an *in camera*

20   inspection and evaluation."  *Id.* at 1467-68 (district court abused its discretion by ordering that entire

21   police personnel file be produced; in view of privacy interests, only that portion of the files which

22   may contain exculpatory evidence or evidence "material to the preparation of a defense" is

23   discoverable).

24                                          **III. DISCUSSION**

25        Morton argues that video and audio recording of Nunez' August 12, 2013 drug transaction

26   constitutes exculpatory material under *Brady.*  According to Morton, when Nunez sold cocaine to

27   the CS in the parking lot on August 12, Nunez was in the company of one of his daughters.  Rather

28   than ask his daughter to deliver the drugs to the CS, Nunez did it himself.  Morton compares this

**United States District Court**
For the Northern District of California

4

United States District Court

For the Northern District of California

1   with the August 28 drug deal.  In that instance, Nunez planned to handle the transaction without

2   assistance by having the CS come to Nunez's car to receive the drugs.  However, because the CS

3   was unwilling to comply, Nunez recruited Morton to make the delivery to the CS.  Morton did so,

4   but asserts that although he took the bag to the CS as his uncle requested, he did not know that the

5   bag contained drugs.

6          Morton argues the August 12 incident establishes that Nunez did not typically use an

7   accomplice to deliver drugs.  Morton intends to use the August 12 incident to argue that on August

8   28, Nunez initially acted in conformance with his typical actions and intended to deliver the drugs to

9   the CS himself, and only involved Morton when the CS declined to go along with the plan.  Morton

10  contends that this would support the theory that Morton did not come to the parking lot with Nunez

11  as his accomplice and lacked knowledge of Nunez's plans to distribute drugs.

12         At the hearing, Morton's counsel confirmed that his only basis for moving to compel the

13  production of the August 12, 2013 material is that it constitutes *Brady* material.  Morton's reasoning

14  fails to establish that information about Nunez's August 12, 2013 drug transaction is exculpatory.

15  The charges against Morton relate only to the events of August 28, 2013.  There are no allegations

16  that Morton was involved in criminal activity prior to that date.  Nunez's unassisted delivery of

17  drugs to the intended buyer in one earlier event does not constitute a pattern of behavior by Nunez

18  that meaningfully illuminates Morton's conduct on August 28, 2013, and does not amount to

19  exculpatory material.  As Morton rested solely on *Brady* to seek discovery of the August 12, 2013

20  materials, this discovery request is denied.

21                                    **IV.  CONCLUSION**

22         For the reasons stated above, Defendant Morton's motion to compel discovery from the

23  government is **denied.**

24

25         IT IS SO ORDERED.

26

27  Dated:  May 9, 2014

28                                    DONNA M. RYU
                                      United States Magistrate Judge

5